No. 2267.

E. S. WAGONER *v.* W. R. RUPLY ET AL.

1. EVIDENCE—FORGERY.—Under the plea of non est factum, when the evidence offered by plaintiff was to the effect that the body of the instrument, the signature to which was alleged to have been forged, was written by the pretended obligor, the defendant may show by the testimony of an expert that the instrument was in the hand writing of the party to be benefited thereby.

2. SAME.—The defendant may also, under like circumstances, show by the testimony of experts, by a comparison between the hand writing of the instrument and that of papers introduced, which were admitted to have been written by the pretended obligor, that they were in a different hand writing.

3. EVIDENCE—DECLARATIONS.—The declarations of the payee of a note made after maturity, and while he owns and holds the same, when made against his interest, are admissible against a subsequent assignee.

4. EVIDENCE—PRACTICE.—If, on the trial of a cause before the judge without the intervention of a jury, illegal evidence is admitted over objections thereto which, if considered, may have improperly influenced the judge, in the absence of something in the record showing that such evidence was not considered, its admission is error, for which the judgment may be reversed.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

This suit was brought by the appellant upon two promissory notes, one for fifteen hundred dollars, dated November 3, 1881, due one day after date, the other for eight hundred and fifty

dollars, dated August 1, 1882, due one day after date, both payable to Virginia R. Eberly, and purporting to be signed by William Ruply. The defendants below, W. R. Ruply and Nancy J. Ruply, were the son and widow of William Ruply, deceased, and were his only heirs. Defendants answered by general denial and plea of non est factum. The plea of non est factum raised the only issue in the case. The case was tried by the judge, and judgment rendered for defendants, from which the plaintiff appealed. The notes were endorsed by the payee to the plaintiff, E. S. Wagoner, after maturity.

Appellant's first assignment of error was that the court erred in admitting the testimony of J. M. Brownson as is found in appellant's first bill of exceptions, because there was no pleading authorizing the testimony, and second, because the testimony was by comparison of hand writing, and he did not profess to have ever seen Miss Eberly write.

Brownson testified over the objection of plaintiff that he had examined the handwriting of Miss Virginia Eberly in her letter exhibited in evidence, and found that the handwriting of the person who wrote the notes was the same as that in the letters, and the word "hundred" in the notes and letters was spelled "hundread". David Arbegost, witness for plaintiff, had previously testified that he saw William Ruply write and sign the fifteen hundred dollar note. The plaintiff had offered evidence by comparrison of handwriting to show that the signature to the notes was genuine.

The second assignment of error was: "That the court erred in admitting the testimony of Mr. Brownson as found in second bill of exceptions, because there was no pleading authorizing it and no notice given that an issue was intended to be made upon the handwriting in the body of the note." The evidence objected to was that he had compared the handwriting in the body of the one thousand five hundred dollar note with letters of William Ruply (exhibited in evidence), and was of opinion that the note was not in the handwriting of Ruply because Ruply always used a small "i," and there was a large "I" in the note, and there were other differences in the formation of letters stated by the witness. Third assignment of error is: The court erred in admitting the testimony of W. R. Ruply as found in third bill of exceptions because the same was hearsay. The testimony objected to was: "My father did leave a will; Miss Eberly and Mrs. Eberly both told me that the furniture in the

house that Mrs. Eberly lived in was bought by William Ruply. Miss Eberly had testified that her mother, Mrs. Eberly, had given her one thousand five hundred dollars, and she gave it to her uncle, William Ruply, for which he executed the note for that amount.

The following testimony of W. R. Ruply was admitted over plaintiff's objections, and the ruling assigned as error. "My father never made any investments in the South to my knowledge after the year 1881, but all the money collected by me for him, went from Texas to Pennsylvania. I never received any money from him while he was in Pennsylvania except a very small sum. At his request, I sent Miss Eberly money on three different occasions when he was in Texas, and she remained with her mother in Pennsylvania. She would write for money, and by his direction, I would send it to her. I sent her thus fifty dollars on three different occasions. Mrs. Eberly had nothing so far as I know. She might have had thousands and I know nothing about it. Miss Eberly testified that her uncle got the money from her to invest in the South. Since the judgment is reversed on the improper admission of evidence, the conflicting testimony tending to establish the forgery becomes unimportant.

*A. B. Peticolas*, for appellant: The court erred in admitting the testimony of J. M. Brownson, as found in appellant's first and second bill of exceptions, because there was no pleading authorizing it, and no notice was given appellant that an issue was intended to be made upon the handwriting of the body of the notes. (Ramsay v. McCauley, 2 Texas, 190; Carter & Hunt v. Wallace, 3 Texas, 206; Hall v. Jones, 3 Texas, 310; Christman v. Miller, 15 Texas, 160; Dennison v. League, 16 Texas, 407; Guess v. Lubbock, 5 Texas, 540; Paul v. Perez, 7 Texas, 338; McGreel v. Wilson, 9 Texas, 426; Pyron v. Grinder, 25 Texas Supp., 159; Mims v. Mitchell, 1 Texas, 443; Smith v. Sherwood, 2 Texas, 460; Rivers v. Foote, 11 Texas, 662; O'Connor v. Silver, 26 Texas, 606; Yancey v. Norris, 27 Texas, 49; Gillies v. Wofford, 26 Texas, 76; Lemmon v. Hanley, 28 Texas, 220; Heilbroner v. Hancock, 33 Texas, 719; Brinckley v. Harkins, 48 Texas, 226; Edrington v. Newland, 57 Texas, 631, 632.)

The plea of non est factum simply puts the plaintiff to the proof of the execution of the instrument objected to as at common law. It does not put in issue, nor admit evidence upon the

subject of the indorsement of the note, nor its consideration, nor alterations in the body of the note, nor the handwriting of any part of the note except the signature. (Barnet v. Logue, 29 Texas, 289; Parr v. Johnston, 15 Texas, 296; Brown v. Cheno-worth, 51 Texas, 470; Wells v. Moore, 15 Texas, 521; Muckleroy v. Bethany, 27 Texas, 551.)

*Glass & Collendar,* for the appellees.

COLLARD, JUDGE. The first assignment of error can not be sustained. The court, over objection of the plaintiff, permitted J. M. Brownson, an expert witness for defendant, to testify that the handwriting in Miss Eberly's letters was the same as the handwriting of the notes sued on, and that the word "hundred" was spelled in the letters and one of the notes "hundread." The objection to the testimony was that there was no pleading to authorize the introduction of the evidence, and that it could not be admitted under the plea of non est factum. It is true that the authorship of the body of the notes was an immaterial issue, but if the evidence had a tendency to identify the author of the signature, or to contradict the evidence of plaintiff's witnesses, it would be admissible. The issue was, did William Ruply sign the notes, or did some one else sign them? Miss Eberly was the payee of both notes; her evidence, giving in detail the circumstances under which her uncle signed the notes was a denial that she wrote or signed them; Abergast swore that he saw William Ruply write and sign the note for fifteen hundred dollars, and Lindsay swore that he, Lindsay, wrote the note for eight hundred and fifty dollars, and saw Ruply sign it. These were plaintiff's witnesses. Defendants had the right to rebut these witnesses by showing by proper testimony that Miss Eberly wrote the notes, and to such conclusion as might arise therefrom that she not only wrote but signed them. If Brownson was correct in his assertion that she wrote the notes, her evidence tending to deny it, and the evidence of Abergast and Lindsay was false, and if false in respect to the authorship of the body of the notes, it might be inferred that it was false in respect to the signatures and other matters about which they testified.

The second assignment of error relates to evidence of Brown-son, that upon comparison of the handwriting of Ruply as found in his letters, which are among the original papers sent

up in the case, and admitted to be Ruply's genuine writing, with the handwriting in the note for fifteen hundred dollars, he was of opinion the note was not in the handwriting of Ruply, because Ruply always used a small "i" and there was a large "I" in the note; the "s" in the note and the "ss" in the letters were not made alike, and because the word "hundred" in the note was spelled "hundread" and was correctly spelled in the letters. The plaintiff objected to the evidence because there was no pleading in the case putting plaintiff on notice that it was the intention of defendants to put in issue the handwriting of the body of the notes, and he could not, therefore, prepare to meet the issue by having genuine specimens of the handwriting of Ruply in court to compare with the notes, but was forced to allow the issue to be settled by an examination of such papers of Ruply as defendants might produce for comparison with the notes.

What has been said of the first assignment of error applies to this. The question raised by the assignments is one of pleading. It is not a question of pleading, but of evidence. There is no rule requiring a party to plead his evidence in a case of this character. The handwriting of the body of the notes became a pertinent inquiry after plaintiff's witnesses had certified that Ruply wrote the notes. There was no objection to the letters of Ruply, nor to the letters of Miss Eberly; they were admitted presumably for the purposes of comparison by the court as genuine. There was no objection to their admission for the purpose of comparison, nor was there any objection to the comparison made. Had the objection been to the papers themselves, upon the ground that they could not be offered for the purpose of making comparison with the notes, a very different question would have been raised—a question, however, upon which the law of the State has been settled. The papers having been admitted without objection, and admitted or treated by both parties as genuine, and sent up for inspection by the Supreme Court, and the object of their admission being certainly to allow the court to make the comparison, it would seem that the opinion of an expert could be taken as to the handwriting and signature of the notes by comparison with the papers. (Kenedy v. Upshaw, 64 Texas, 420; Smyth v. Caswell, 67 Texas, 573; 1 Greenl. Ev., 581.) The second assignment of error, then, can not be sustained.

The third assignment is that "the court erred in admitting the

testimony of W. R. Ruply, one of the defendants as found in appellant's third bill of exceptions." By reference to the bill we see the evidence objected to was as follows: "My father did have a will. Miss Eberly and Mrs. Eberly both told me that the house that Miss Eberly lived in, in Mechanicsburg, were bought by William Ruply."

Miss Eberly testified that her mother gave her the one thousand nine hundred dollars, part of the money loaned to her uncle, and also as follows: "My mother paid for a part of the furniture in the house in which we lived; my uncle paid for a very small portion of it." In the very next line, as the evidence is written in the statement of facts she says: "The greater portion was paid for by uncle." It may be inferred that the object of the testimony Ruply objected to was to contradict Miss Eberly and to show that Mrs. Eberly was impecunious and could not have had the one thousand nine hundred dollars to give her daughter. There was no predicate laid to admit the declaration of Mrs. Eberly made out of court, as impeaching evidence. If it had appeared that she made the declaration while she was the owner and holder of the notes, she having assigned them to plaintiff after maturity, her declaration against her interest would would have been admissible against her assignee. (1 Greenleaf on Evidence, 190.) The declarations of Mrs. Eberly were clearly inadmissible. They were hearsay and ought not to have been heard by the court. The plaintiff objected to the evidence as hearsay, and reserved a formal bill of exceptions to the ruling; and, though the evidence related to a circumstance only indirectly connected with the matter in dispute and may have had but little weight, we are not satisfied that it did not have any influence with the judge in the conclusions of fact reached. Mr. Greenleaf says: "In trials of fact, without the aid of a jury, the question of the admissibility of evidence, strictly speaking, can seldom be raised; since, whatever be the ground of objection, the evidence objected to must of necessity be read or heard by the judge in order to determine its character and value. In such cases the only question is upon the sufficiency and weight of the evidence." (1 Greenl. Ev., 49.)

But if, in the trial of a question of fact by the judge, improper evidence is admitted over formal objections, and there is nothing in the record to show that it was not considered by the judge in deciding the issue, the court on appeal can not say he was not

influenced by the evidence, and hence must hold that there was
error.   We are not prepared to say that the trial judge was not
influenced by the hearsay evidence offered over formal objec-
tions, and must therefore hold that there was reversible error
in admitting the evidence.

The fourth assignment of error is not well taken.   It is based
upon the admission of evidence of W. R. Ruply that his father
never sent any money south for investment after 1881; that
money went from Texas to Pennsylvania, to his father, but none
came back, and that on three occasions he had sent Miss Eberly
fifty dollars, by his father's directions, after Miss Eberly had
written for it.   Miss Eberly had testified that, when she let her
uncle have the fifteen hundred dollars for which the note in that
amount was given, he told her that he was making investments
in the south and would invest the fifteen hundred dollars there.
She had also testified about her mother, with whom she was
living, having the nineteen hundred dollars which, on her death
bed, she had given to the witness.   The evidence offered and
objected to was pertinent and in rebuttal, and, however weak,
was admissible.   The other part of Ruply's evidence objected
to—that Mrs. Ruply had nothing, so far as he knew, but might
have had thousands and he know nothing about it—was not a
statement of any fact, and could not have prejudiced the plain-
tiff's case.

As to other assignments of error, we only need say that the
Supreme Court will not reverse a case merely because the record
may show a preponderance of evidence against a verdict of a
jury or the findings of fact by a judge.   (H. & T. C. Ry. Co. v.
Larkin, 64 Texas, 454.)

Because of the error pointed out in admitting hearsay evi-
dence, we conclude the case should be reversed and remanded
for a new trial.

                                    *Reversed and remanded.*
Opinion adopted January 31, 1888.